*Southern District*

# No. 116

## IRVIN M. DAVIS
### v.
## COMMERCIAL TRAVELERS MUTUAL INSURANCE CO.

Argued: August 27, 1975. Decided: April 29, 1976

This action was commenced in Suffolk Superior Court by writ dated November 8, 1973 and was remanded to the District Court of Northern Norfolk on October 2, 1974, pursuant to the provisions of G.L. (Ter. Ed.) c. 231, s. 102C, as amended.

Case tried to ———— *J.,* in the District Court of Nor-
thern Norfolk. Number: R-2887.

Present: Tamkin, J. (Presiding); and Hurd, J.

**Hurd, J.** The plaintiff appeals from the allowance
of the defendant's motion to dismiss a contract action
in which the plaintiff claims the defendant owes him
the sum of $430.65 for disability benefits under an
accident policy issued by the defendant to the plaintiff.

The defendant moved for dismissal of the action
on the grounds that "the present action should have
been joined with an action between the same parties
commenced in the Municipal Court of the City of
Boston (SC 69221)."

We summarize the evidence as follows: Effective
July 1, 1966, and in force on March 2, 1973, plaintiff
was insured with the defendant under an accident
policy which provided among others, total and partial
disability benefits and hospital confinement coverage.
On March 2, 1973, the plaintiff, an attorney at law
then seventy-four years of age, suffered injuries while
skiing in Switzerland. Among the injuries he claims
to have sustained as a result of the accident was a
left middle cerebral embolus causing a period of
speech impairment which manifested itself on March
7, 1973, and for which he was treated and then hos-
pitalized at Massachusetts General Hospital. On April
27, 1973, the plaintiff filed a Preliminary Report of
Accident with "Attending Physician's Statement" on
a form furnished by the defendant, which disclosed
his period of hospitalization to have been from March
26, 1973 to April 3, 1973. The Preliminary Report
also declared that he was still partially disabled under
a physician's care and that this period of partial dis-
ability was uncertain. On July 13, 1973, the plaintiff
notified the defendant that he was amending his
April 27, 1973 statement as to partial disability to
read "from March 7, 1973, on which date I suffered
a speech impairment, to March 26, 1973, the date on

which I was admitted to the hospital and from April 3, 1973, the date I left the hospital, to the present time (July 13, 1973)".

On July 19, 1973, the plaintiff commenced a Small Claims action in the Municipal Court of the City of Boston claiming hospital benefits for the nine days, March 27 through April 3, 1973, that he was a patient at Massachusetts General Hospital and partial disability benefits for the period March 7 through March 25, 1973.

On October 5, 1973 this Small Claims action was tried in the Municipal Court of the City of Boston resulting in a finding for the plaintiff in the sum of $192.85. Judgment entered on October 19, 1973 and was paid by the defendant on November 15, 1973.

On November 8, 1973, the plaintiff commenced the present case in Suffolk Superior Court claiming the defendant owed him nine days total disability benefits while he was hospitalized from March 26 through April 3, 1973 in the amount of $64.33 and partial disability benefits from April 4, 1973 through July 13, 1973 in the amount of $360.97 or a total of $425.30.

The accident policy with hospital confinement coverage was introduced as an exhibit at the trial and was attached to the report. Paragraph 8 of the policy provides that upon proof of loss "all accrued benefits for loss for which . . . (the policy) provides periodic payment *will upon request of the member* be paid at the expiration of each 30 days during the continuance of the period for which (the insurer) is liable . . . emphasis supplied). Paragraph 11 provides that "No action at law . . . shall be brought to recover . . . prior to the expiration of 60 days after written proof of loss has been furnished . . ."

The plaintiff insists that the defendant's motion to dismiss should have been denied because on July 19, 1973, when he commenced his Small Claims action

he was barred by Paragraph 11 of the policy from including his claim for partial disability benefits until sixty days after his proof of loss of July 13, 1973, or not before September 13, 1973. Furthermore, he asserts there was no reason why instead of commencing his Small Claims action on July 19, he should have been required to wait until sixty days after his disability terminated on September 13, 1973, and then to have incorporated all of his claims in one action. The plaintiff refers to that part of the policy which provides for "weekly benefits" and Paragraph 8, hereinbefore referred to, which calls for "periodic payment" (defined as one covering payment for a defined number of days or weeks) to be paid "at the expiration of each 30 days during the continuance of the period for which the (Insurer) is liable". It is the plaintiff's position that on July 19, 1973, when he brought his Small Claims action, he was entitled, pursuant to Paragraph 8, to have been paid for his partial disability from March 7 through March 25, 1973, as reported to the defendant by the Preliminary Report of Accident submitted on April 27, 1973.

There was no error in the allowance of the defendant's motion to dismiss the present action.

The plaintiff's insistence that Paragraph 8 of the policy allowed him to maintain separate actions because the policy called for "weekly benefits" and "periodic payments at the expiration of each 30 days" cannot be maintained as he failed to request periodic payments as required by the policy. On the contrary, the Preliminary Report of Accident of April 27, 1973 indicated that the period of partial disability was uncertain as he was still under a doctor's care. Nor

did he submit separate proofs of loss for hospital confinement, total disability and partial disability. It was not until July 13, 1973, when he filed his proof of loss, that his period of partial disability was finally determined. Thus on July 19, 1973, when he commenced his Small Claims action, the plaintiff's periods of total and partial disability and hospital confinement had been established. Although the report does not disclose the date upon which the defendant refused to honor the plaintiff's claim, it would appear that the plaintiff must have received notice of refusal prior to July 19, 1973.

Under the circumstances, the proper and logical procedure would have been for the plaintiff to have waited until September 13, 1973, when he could commence his action for payment of partial disability payments for the period set forth in his proof of loss of July 13, rather than to proceed in a piecemeal fashion as he did here.

The issue presented by this case is whether a plaintiff may bring a second action at law for additional damages against a defendant from whom he has previously obtained judgment on the merits arising from the same cause of action. We are of the opinion that he cannot do so.

In *Canning v. Shippee*, 246 Mass. 338 (1923), the plaintiff having prevailed in a suit in equity for specific performance of contract to buy and sell real estate afterwards brought an action of contract for damages to the real estate during the period of wrongful withholding by the defendant of the premises described in the suit in equity. At pages 339-340, the Court by Rugg, C.J. held: "The validity, nature,

extent and breach of the contract for purchase and sale of real estate all were necessarily at issue in the suit for specific performance. All damages arising from its breach by the defendant were also properly subject to adjudication in that suit . . . All claims of the plaintiff against the defendant flowing from his breach of that contract ought to have been adjusted in the suit for specific performance. They cannot be made the subject of a separate action . . . (cases cited). It is the general rule that all damages resulting from a specified cause of action must be assessed in one proceeding. A single cause of action cannot be split into fractions and thus made the basis of several proceedings . . . (cases cited)."

In *Derderian v. Union Market National Bank,* 326 Mass. 538 (1950), the plaintiff mortgagor brought an action in tort against the mortgagee bank to recover damages arising out of the improper and wrongful manner in which the mortgagee had conducted a foreclosure sale of the mortgaged premises. The mortgagee bank had previously brought a bill in equity to recover the balance due after the foreclosure sale on the promissory note which was secured by the mortgage which the plaintiff had given it. In the answer to the bill in equity the defendant claimed the bank had improperly conducted the foreclosure sale and claimed a trial by jury on the question whether the bank had established its debt against him. The jury found against the bank and thereafter a final decree was entered dismissing the bill. In overruling plaintiff's exceptions to a finding for the defendant, the bank in Dederian's case, it was said at page 541: "The damages now sought arise out of the identical transaction which was the basis of the equity suit, and the total amount of damages sustained by the mortgagor had been incurred upon completion of the foreclosure sale. The mortgagor was free to set up these damages by way of recoup-

ment or to bring an action to recover his entire damages. He had a single cause of action and he was not entitled to have his damage partially assessed in successive actions. *Canning v. Shippee,* 246 Mass. 338, 339-340. *Dearden v. Hey,* 304 Mass. 659, 661-662." Similarly, in *Cole v. Bay State Street Railway,* 223 Mass. 442 (1916), it was held that the administrator of an estate could not bring a separate action of tort for medical, hospital and similar expenses incurred by his intestate, when he had previously recovered damages for her death and conscious suffering in an earlier tort action.

In *Runyan v. Great Lakes Dredge and Dock Co.,* 141 F. 2d 396 (1944), a seaman who had recovered damages for an injured hand was barred from further recovery when he discovered that further surgery would be required for a permanent cure. At page 397 the Court said: "[a]ppellant makes no claim that the items of recovery which he now seeks were unknown to him during the pendency of the first suit or that they were omitted therefrom through mistake or ignorance or that they were based on new facts or conditions . . . He who avails himself of a judgment for a part of an entire indivisible claim estops himself from maintaining an action upon any other part of it."

While the principle established by the foregoing cases may appear to be harsh, overcrowded dockets, and the costliness of court action results in an interest and effort by the courts to limit the number of actions presented for trial. "Sympathy for the hapless plaintiff who suffers because of this state of affairs should not obliterate the fact that had he originally prepared his case more carefully, he would not be faced with the possibility of being barred in a subsequent attempt." 34 B.U.L. Rev. 64, 72 (1954).

There being no prejudicial error, **the report is dismissed.**